Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| FRANCISCO GÓMEZ PAULINO **Peticionario** V. VANESA MARIE CRUZ COLÓN **Recurrida** | KLCE202400968 | *CERTIORARI* procedente del Tribunal de Primera Instancia de Ponce Núm Caso: AI2022RF00411 Sobre: Custodia-Relaciones Paterno/Materno Filiales |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

**Hernández Sánchez, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 20 de septiembre de 2024.

El 9 de septiembre de 2024, el Sr. Francisco Gómez Paulino (señor Gómez o peticionario) compareció ante nos mediante *Certiorari* y solicitó la revisión de una *Orden* que se emitió el 8 de agosto de 2024 y se notificó el 9 de agosto de 2024 por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI). Mediante el aludido dictamen, el TPI declaró No Ha Lugar la *Solicitud de Remedios en Torno a Referido a la Unidad Social* que presentó el peticionario. Puntualizó que el remedio que solicitó el peticionario en la Demanda fue el establecimiento de relaciones filiales. Además, aclaró que lo que se ordenó en la *Minuta* del 17 de abril de 2024, fue que se refería el caso a la Unidad Social para rendir informe complementario conforme al plan de seguridad que estableció el Departamento de la Familia en el referido 10503217 y OPA 2024-042991. Añadió que en la referida *Minuta* no se hizo referencia en ningún momento al concepto de custodia compartida.

Por los fundamentos que expondremos a continuación, **denegamos** el recurso de epígrafe.

I.

El 27 de diciembre de 2022, el peticionario presentó una *Moción sobre Custodia, Relaciones Paterno Filiales o Patria Potestad.*[1] Alegó que trató de comunicarse en varias ocasiones con la madre de su hija menor de edad, la Sra. Vanesa Marie Cruz Colón (señora Cruz o recurrida), para poder relacionarse con su hija, pero que no había recibido respuesta. Así pues, le solicitó al TPI a que estableciera las relaciones filiales para poder compartir con su hija. Particularmente solicitó ver a su hija en su horario de almuerzo, a saber, de 1:00pm hasta las 2:00pm en la residencia de la madre de la señora Cruz y recogerla de dicha residencia a las 5:00pm para compartir con ella hasta las 7:00pm.

En respuesta, el 13 de febrero de 2023, la recurrida presentó su alegación responsiva y una reconvención.[2] En su contestación a la demanda, la señora Cruz negó la mayoría de las alegaciones en su contra. Específicamente, adujo que nunca había impedido que el peticionario se relacionara con la menor de edad. Sin embargo, señaló que este último pretendía llevar a cabo sus relaciones paternofiliales cuando la menor estaba siendo cuidada por su abuela materna o en altas horas de la noche, a saber, entre ocho a diez de la noche. Sostuvo que se debía llevar a cabo un plan de relaciones paternofiliales que fuese razonable y adecuado para una menor que era lactada completamente y que apenas tenía cuatro meses de nacida. De igual forma, solicitó que se refiriera el presente asunto a las Oficinas de Relaciones de Familia para que se realizara una investigación adecuada para garantizar el interés óptimo de la menor. Por último, solicitó que el peticionario fuese evaluado psicológicamente.

---

[1] Véase, Anejo I del apéndice del recurso.
[2] Íd., Anejo II.

Por otro lado, en la Reconvención, la señora Cruz argumentó que ostentaba la custodia física de la menor y que se había establecido mediante un affidávit que el peticionario le pasaría a la menor de edad la cantidad de $400.00 para cubrir sus necesidades. Sin embargo, sostuvo que el peticionario incumplió con el pago estipulado por lo que le solicitó al TPI a que refiriera el caso a la Oficina de Examinadores de Pensiones Alimentarias para la fijación adecuada de la pensión alimentaria. El 15 de marzo de 2023, el peticionario presentó su *Contestación a Reconvención.*[3] En esta, se limitó a expresar que siempre ha aportado cantidades de dinero para la alimentación, vestimenta y cuido de la menor. Además, solicitó que el caso se refiriera a la Unidad Social para la correspondiente investigación y preparación del informe sobre custodia y/o custodia compartida cónsono con lo solicitado en la demanda.

Posteriormente, el 27 de junio de 2023, se celebró una vista mediante videoconferencia y ese mismo día, el TPI emitió una *Resolución y Orden* que fue notificada el 7 de julio de 2023, estableciendo las determinaciones que se dictaron durante la vista.[4] Mediante esta, le concedió al peticionario relaciones filiales provisionales, inicialmente sin pernoctar hasta que se presentara el informe de la Unidad Social. Dispuso que estas relaciones filiales comenzarían el domingo 2 de julio de 2023 y que se llevarían a cabo todos los jueves de 7:30am hasta las 5:00pm y los domingos alternos de 9:00am a 6:00pm. Además, en lo pertinente, estableció que la custodia de la menor sería provisionalmente con la madre y la patria potestad compartida entre ambos.

De igual forma, el 27 de junio de 2023, el TPI emitió una Orden dirigida a la Unidad Social para que realizara un estudio social de custodia compartida, relaciones paternofiliales y custodia

---

[3] Íd., Anejo V.
[4] Íd., Anejo VII.

monoparental del presente caso.[5] En cumplimiento con esta orden, el 22 de noviembre de 2023, la Unidad Social de Familia y Menores presentó una moción informativa en la cual informó que había culminado el proceso de evaluación y junto a este escrito anejó el informe realizado a tales efectos. En lo pertinente, mediante dicho informe, la trabajadora social recomendó que la custodia de la menor le fuese otorgada a la madre, la señora Cruz. Sin embargo, de igual forma, recomendó que el padre se relacionara con la menor en su día libre de la semana de 8:00am a 6:00pm y los domingos alteros de 9:00am a 6:30pm, recogiendo y entregando a la menor en la residencia de la señora Cruz.

Luego de varios trámites procesales, el 16 de abril de 2024, se celebró una vista. De la *Minuta* de esta vista surge que las representaciones legales de ambas partes le solicitaron al TPI a que tomara conocimiento judicial de la radicación de cargos criminales en contra de la señora Cruz y de una orden de protección que se expidió a favor del señor Gómez por la duración de dos años.[6] Se discutió que, por los hechos antes expuestos, el Departamento de la Familia intervino en el caso y la menor fue ubicada bajo la custodia provisional del abuelo y la abuela de su hermana mayor. Indicaron que la primera persona a considerarse para ostentar la custodia provisional de la menor fue el señor Gómez, pero que el Departamento de la Familia decidió no otorgársela a base de uno referidos fundamentados por maltrato y agresión física a un menor de edad por parte del peticionario.

Así las cosas, la representación legal del señor Gómez solicitó que se refiriera el caso nuevamente a la Unidad Social para que evaluara el asunto de relaciones filiales y rindiera un informe complementario a tales efectos. Ante ello, el TPI determinó que

---

[5] Íd., Anejo VIII.
[6] Íd., Anejo XIV.

tomando en consideración las circunstancias traídas a su atención dejaba sin efecto la sentencia acogiendo la recomendación del informe social ya emitido y le ordenó a la Unidad Social a que rindiera un informe complementario conforme a las nuevas circunstancias antes discutidas.

Ahora bien, en cuanto a la custodia de la menor, el TPI expresó que tenía conocimiento de que una ley especial había intervenido en medio de una determinación de custodia por lo que le tenía que darle espacio total al Departamento de la Familia para que atendiera ese asunto. En consecuencia, indicó que, en este momento, no podía referirle a la unidad Social el asunto de la custodia hasta tanto culminara el proceso de maltrato y el Departamento de la Familia concluyera su investigación e intervención.

Cabe precisar que, las determinaciones antes mencionadas fueron acogidas mediante una *Resolución y Orden* que se emitió el mismo día de la celebración de la vista, a saber, 16 de abril de 2024 y se notificó el 24 de abril de 2024.[7] Además, en esta, el TPI ordenó el traslado del caso a la región de Ponce ya que los servicios que ofrecía el Departamento de la Familia se estaban brindando en esa región. Así las cosas, el 15 de mayo de 2024, la jueza que ahora presidía el caso de autos, le ordenó a la Oficina de Relaciones de Familia del TPI a que llevara a cabo un estudio social sobre relaciones filiales.[8]

Inconforme con esta orden, el 17 de junio de 2024, el peticionario presentó una *Moción en Solicitud de Remedios en Torno a Referido a la Unidad Social.*[9] Señaló que, en su Demanda había solicitado la custodia monoparental y/o compartida de su hija menor y a esos efectos se refirió el caso a la Oficina de Relaciones

---

[7] Íd., Anejo XVII.
[8] Íd., Anejo XIX.
[9] Íd., Anejo XX.

de Familia. Sostuvo que el informe social rendido por dicha oficina, del cual se solicitó que se realizara un informe complementario, no era únicamente en torno a las relaciones paternofiliales, sino que también incluía la evaluación de la custodia monoparental y/o compartida. En vista de ello, le solicitó al TPI a que incluyera el encasillado de custodia monoparental o custodia compartida en el referido.

Posteriormente, se rindió el informe social sobre relaciones paternofiliales y el 7 de agosto de 2024, el peticionario presentó una moción solicitando nuevamente a que el TPI incluyera el encasillado de custodia monoparental o custodia compartida en le referido para que este fuese compatible con el referido inicial.[10] Argumentó que debido a que el informe no incluyó una evaluación de custodia monoparental o custodia compartida, que este era incompleto y, por tal razón, impugnaba sus recomendaciones y su contenido.

Evaluados los escritos del señor Gómez, el 8 de agosto de 2024, el TPI emitió una *Orden* que se notificó el 9 de agosto de 2024 declarando No Ha Lugar la *Solicitud de Remedios en Torno a Referido a la Unidad Social* que presentó el peticionario.[11] Puntualizó que el remedio que solicitó el peticionario en la Demanda fue el establecimiento de relaciones filiales. Además, aclaró que lo que se ordenó en la *Minuta* del 17 de abril de 2024, fue que se refería el caso a la Unidad Social para rendir informe complementario conforme al plan de seguridad que estableció el Departamento de la Familia en el referido 10503217 y OPA 2024-042991. Añadió que en la referida *Minuta* no se hizo referencia en ningún momento al concepto de custodia compartida.

---

[10] Íd., Anejo XXI.
[11] Íd., Anejo XXII.

En desacuerdo con esta determinación, el 9 de septiembre de 2024, el señor Gómez presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **Erró el Tribunal de Primera Instancia al privar al demandante-apelante de su debido proceso de ley en su vertiente procesal al declarar No Ha Lugar su solicitud de que el Tribunal ordenara un referido enmendado a la Oficina de Relaciones de Familia para que se incluyera el encasillado de custodia o custodia compartida tal como se ordenó en el referido inicial.**

> **Erró el Tribunal de Primera Instancia al emitir orden a la Oficina de Relaciones de Familia solicitando un informe únicamente en torno a relaciones filiales y no incluir el encasillado de custodia monoparental y/o custodia compartida.**

Atendido el recurso, el 10 de septiembre de 2024 emitimos una Resolución concediéndole a la señora Cruz hasta el 18 de septiembre de 2024 para presentar su postura en cuanto al recurso. Oportunamente, la recurrida presentó *Alegato de la Recurrida-Demandada* y negó que el TPI cometiera los errores que el peticionario le imputo. Con el beneficio de la comparecencia de ambas partes procedemos a resolver el asunto ante nos. *Veamos.*

II.

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró,* 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto ya que no tenemos

autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

En otros términos, la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró,* supra, pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago,* 176 DPR 559, 581 (2009).

### III.

Conforme a la Regla 52.1 de Procedimiento Civil, *supra,* este Tribunal tiene jurisdicción para atender el presente recurso toda vez que se recurre de un caso de relaciones de familia. Ahora bien, luego de evaluar el recurso de epígrafe, a la luz de la totalidad del expediente, y a los criterios que emanan de la Regla 40 de nuestro Reglamento, *supra,* determinamos denegar el recurso de epígrafe. Ello, ya que no se configura ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios en los que el TPI haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

### IV.

Por los fundamentos antes expuestos, ***denegamos*** el recurso de epígrafe.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones